IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

ANTONIO FULGHAM et al.,

    Plaintiffs,

v.                      CIVIL NO.: WDQ-11-0579

HOUSING AUTHORITY OF
BALTIMORE CITY,

    Defendant.

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Antonio Fulgham and Brittany McCutchen brought a garnishment proceeding against the Housing Authority of Baltimore City ("HABC") in state court. For the following reasons, the United States Department of Housing and Urban Development's ("HUD's") motions to intervene and for leave to file a supplemental brief will be granted. HUD's motion to quash and the plaintiffs' motions to remand and for other relief will be granted in part, and denied in part.[1] Hyatt's motion for judgment and the plaintiffs' motion for writ of garnishment will be remanded.

I. Background

In 2007, Antonio Fulgham and Tonia Blue, on behalf of her daughter Brittany McCutcheon, sued HABC for lead paint injuries

---

[1] Fulgham and Hyatt requested hearings on their motions. Because the issues have been thoroughly briefed, no hearing is necessary.

in the Circuit Court for Baltimore City. ECF No. 14 Ex. 1. HABC was held liable to Fulgham for $1,273,000 and to McCutcheon for $1,320,000. ECF No. 25 Ex. 7. The Clerk of the Baltimore City Circuit Court issued writs of garnishment directing Merrill Lynch, Towner Management Corporation, and Edgewood Management Corporation to "hold . . . the property of the judgment debtor in [their] possession." ECF No. 2. The Clerk also issued a writ of garnishment on HABC's personal property and on Hyatt Hotels Corporation.[2] ECF No. 25 Exs. 12, 15.

HABC holds several accounts with Bank of America, including a "CIS" account, opened with Merrill Lynch, which is now owned by Bank of America. Notice of Removal Ex. D. All HABC Bank of America accounts are governed by a General Depository Agreement ("GDA"), between Bank of America and HABC representatives. The GDA states that "HUD is intended to be a third party beneficiary of this Agreement and may sue to enforce its provisions and to recover damages for failure to carry out its terms." *Id.* Ex. E, ¶ 12. HUD may freeze HABC's access to the accounts, and neither party may modify the agreement without HUD's approval. *Id.* Ex. E, ¶¶ 5, 10.

HUD regulates its grants with Federal regulations and contracts with HABC. Under the regulations, "[a]ny obligation

---

[2] Hyatt does business with Baltimore City, but the plaintiffs believed that Hyatt owed HABC money. ECF No. 45.

2

entered into by [HABC] is subject to HUD's right to recapture the obligated amounts for violation by [HABC] of the requirements of this section." 24 C.F.R. § 905.120 (e). The annual contributions contracts ("ACCs"), under which HUD distributes the funds to the HABC, require HABC to "develop and operate each project solely for the purpose of providing decent, safe, and sanitary housing for eligible families." Notice of Removal, Ex. I. at § 4. If the funds are not spent as directed, HUD may require HABC to "convey to [HUD] title to the project(s)" or "deliver possession and control of the project(s)." *Id.*, Ex. I. at § 17.

Towner and Edgewood are privately-owned management companies. Towner and Edgewood manage 10 housing developments for HABC: Towner manages four and Edgewood manages six, that "include either 100% public housing units or a mixture of public housing and other affordable housing units" for which HABC receives federal funds under an ACC "between HABC and HUD." Notice of Removal Exs. G, H. HUD provides Federal Section 9 housing subsidies to HABC for the properties. Supp. Br. 2, 3. HABC also receives state funds through the Maryland Partnership Rental Housing Program for eight of the Towner managed properties and five of the Edgewood properties, and Towner and Edgewood collect and hold tenant rents on HABC's behalf pursuant

to "security agreements and assignments of rents . . . held by the State of Maryland."[3] Id. Exs. G, H.

On March 2, 2011, HUD removed the case to this Court. ECF No. 1. On March 16, 2011, the plaintiffs moved to remand. ECF No. 13. On April 5, 2011, they moved to enforce the writ on HABC's personal property. ECF No. 29. On April 8, 2011, HUD moved to intervene and, on April 21, 2011, to quash the writ of garnishment. ECF Nos. 30, 33. On April 21, 2011, the plaintiffs moved for a writ of garnishment on HABC's accounts at Deutsche Bank.[4] ECF No. 35. On July 12, 2011, Hyatt Hotels Corporation of Maryland moved for judgment.[5] ECF No. 45. On September 20, 2011, HUD filed a consent motion for leave to file a supplemental brief. ECF No. 47.

---

[3] HABC regulates Towner's and Edgewood's use of HABC subsidies and rents collected under property management agreements between HABC and Towner or Edgewood. HABC must approve the properties' operating budgets and Towner and Edgewood may not use HABC funds for unauthorized purposes. Mem. in Supp. of Mot. to Quash Ex. K § 8.7.

[4] On June 15, 2011, HUD moved for an extension of time to respond to the plaintiffs' motion for writ of garnishment. ECF No. 41. On July 21, 2011, HUD indicated that it would not file a response to the motion, mooting the motion to extend the time to respond. ECF No. 46.

[5] The parties did not oppose this motion.

4

II. Analysis

   A. Motion to Remand

   The plaintiffs argue that removal was improper because this Court lacks original jurisdiction over the case, 28 U.S.C. § 1442(a)(1) does not provide a basis for removal, and the writs are ancillary proceedings not subject to removal. Pl.'s Mem. in Supp. of Mot. to Remand 2-4, 8.

   HUD has the burden of showing that removal was proper.[6] The federal officer removal statute, 28 U.S.C. § 1442(a)(1), permits removal of actions against the United States, its agencies, and its officers.[7] The statute "is broad and allows for removal when its elements are met 'regardless of whether the

---

[6] *Strawn v. AT&T Mobility, LLC*, 530 F.3d 293, 296 (4th Cir. 2008). "[A] party seeking to adjudicate a matter in federal court must allege, and when challenged, must demonstrate the federal court's jurisdiction over the matter." *Id.* If federal jurisdiction is "doubtful," remand to state court is necessary. *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir. 2004) (*quoting Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994)).

[7]
   (a) A civil action . . . commenced in a State court
   against any of the following may be removed by them to
   the district court of the United States for the
   district and division embracing the place wherein it
   is pending:

   (1) The United States or any agency thereof or any
   officer (or any person acting under that officer) of
   the United States or of any agency thereof, sued in an
   official or individual capacity for any act under color
   of such office . . . .

28 U.S.C. § 1442(a).

suit could originally have been brought in federal court.'"[8] *City of Cookeville v. Upper Cumberland Elec. Membership Corp.*, 484 F.3d 380, 389 (6th Cir. 2007) (quoting *Willingham v. Morgan*, 395 U.S. 402, 406 (1969)). Its "basic purpose is to protect the federal government from [state] interference with its operations." *Watson v. Phillip Morris Co.*, 551 U.S. 142, 142 (2007) (internal quotation marks omitted).

To show that the removal was proper under 28 U.S.C. § 1442(a)(1), HUD must demonstrate that: (1) the garnishment is a "civil action," (2) which was "commenced . . . against" it. 28 U.S.C. § 1442(a)(1).[9] A state garnishment proceeding is a "civil action," which may be removed under § 1442(a)(1), if the

---

[8] The plaintiffs argue that proceedings that are "'merely ancillary or supplemental to another action cannot be removed from a state court to a federal court.'" Mot. to Remand 8 (quoting *W. Med. Props. Corp. v. Denver Opportunity, Inc.*, 482 F. Supp. 1205, 1297 (D. Colo. 1980)). Despite this general rule, § 1441(a)(1) permits an officer or agency of the United States to remove a garnishment proceeding after the resolution of a valid state court proceeding. *See, e.g., Nationwide Investors v. Miller*, 793 F.2d 1044, 1045 (9th Cir. 1986); *Palmiter v. Action, Inc.*, 733 F.2d 1244, 1247 (7th Cir. 1984); *Goods v. Hous. Auth. of Balt. City*, No. WDQ-10-2293, 2011 WL 809488 at *1 (D. Md. Mar. 2, 2011); *Smith v. Hous. Auth. of Balt. City*, No. WDQ-10-1806, 2011 WL 232006 at *1 (D. Md. Jan. 24, 2011); *Kordus v. Biomark Int'l, LLC*, 224 F.R.D. 590, 593 (D. Del. 2004).

[9] *See City of Cookeville*, 484 F.3d at 389 (The United States and its agencies may remove without regard to whether the suit is against them in "an official or individual capacity for any act under color of such office.").

6

statute's other requirements are met.[10]  Thus, § 1442(a)'s first requirement is met: this is a removable civil action.

Federal courts are to avoid "a narrow, grudging interpretation" of § 1442(a).  *Willingham*, 395 U.S. at 407.  The phrase "commenced against" should be construed with respect to the statute's purpose of protecting the federal government from state interference with its operations.  *See Nationwide Investors v. Miller*, 793 F.2d 1044, 1047 (9th Cir. 1986).  The statute should be interpreted to provide the government with a federal forum when a ruling of significant "potential federal impact [is] at stake."  *Id.*

A garnishment action may be "commenced against" a federal agency for § 1442(a) purposes even if the agency is not named as a defendant or garnishee.  *Nationwide*, 793 F.2d at 1046.  It is enough that the federal government is "threatened with the state's coercive power."  *Id.*  A case is removable when the plaintiff seeks to garnish or attach federal funds that are held

---

[10] *See Nationwide*, 793 F.2d at 1045 (state garnishment proceeding to which federal officer was summoned was removable under § 1442(a)(1)); *Kordus*, 224 F.R.D. at 593 (allowing removal of garnishment action against United States which sought to obtain judgment debtor's property seized by government in civil forfeiture action); *Goods*, 2011 WL 809488 at *1 (garnishment action was a removable civil action); *Smith*, 2011 WL 232006 at *1 (same).

7

in the named defendant's bank account.[11] *Goods v. Hous. Auth. of Balt. City*, No. WDQ-10-2293, 2011 WL 809488 at *2 (D. Md. Mar. 2, 2011). Funds may be federal when they are "governed by pervasive federal legislation and regulations which specif[y] the purposes for which the funds [may] be used." *Palmiter v. Action, Inc.*, 733 F.2d 1244, 1247 (7th Cir. 1984).[12]

1. Merrill Lynch Writ

The Notice of Removal alleges that "the garnished funds include federal funds regulated by HUD." Notice of Removal ¶ 2. HUD has produced a June 28, 2010 letter from H. Rainbow Lin, HABC's chief financial officer, stating that "all of the HABC

---

[11] Federal funds held by a grantee remain the property of the federal government until they are expended in accordance with the terms of the grant. *Buchanan v. Alexander*, 45 U.S. (4 How) 20, 20-21, 11 L.Ed 857 (1846). Although the federal government may not be a named party, a garnishment operating against those funds "threaten[s it] with the state's coercive power." *See Nationwide*, 793 F.2d at 1046; *Palmiter*, 733 F.2d at 1245-46 (United States was "the real party in interest" in garnishment proceeding to secure tort judgment against non-profit organization because garnishment was directed at federal Head Start funds in organization's account). Federal funds "are specifically appropriated to certain national objects, and if such appropriations may be diverted and defeated by State process . . . the functions of the government may be suspended." *Buchanan*, 45 U.S. 20-21.

[12] *See also United States Dep't of Housing and Urban Dev. v. K. Capolino Const. Corp.*, No. 10-0390, 2001 WL 487436, at *4. (S.D.N.Y. May 7, 2010)(To determine whether dispensed funds remain federal, courts may consider "whether the funds were dispensed according to conditions, whether the United States retains a reversionary interest in the funds, and whether the United States employs accountability procedures to ensure that the grants are . . . spent as directed.").

accounts at [Bank of America] . . . except for the Discretionary Income Funds Checking . . . and the Expert Pay MD Child Support . . . contain Federal funds." Notice of Removal Ex. B. HUD has also shown that the federal funds held in the Merrill Lynch account are subject to "pervasive" regulation and supervision,[13] and HUD has a reversionary interest in some of the funds.

Although the HUD funds may be in HABC's bank accounts, they remain federal. The writ of garnishment, operating against those funds is a civil action "commenced against" HUD for § 1442 purposes. The requirements of § 1442(a) are met, and original jurisdiction is not required for this Court to hear the case. *Willingham*, 395 U.S. at 406 (the statue allows removal "regardless of whether the suit could originally have been brought in federal court"); *see also Goods v. Hous. Auth. of*

---

[13] *Palmiter*, 733 F.2d at 1247. HABC receives HUD funding under Section 9 of the United States Housing Act of 1937, which defines the purpose of the funds as carrying out "capital and management activities" and "operation and management of public housing." 42 U.S.C. § 1437g (d)-(e). Applicable regulations govern how HABC may handle the funds, require that it "submit an acceptable audit" of the funds, and give HUD the right to recapture funds. 24 C.F.R. §§ 990.120(e), 990.320. HABC's contracts with HUD and Bank of America give HUD the power to freeze accounts holding funds from HUD and force HABC to reconvey title, possession, and control of projects to HUD. Notice of Removal Exs. E, ¶5, I at § 17.

*Balt. City*, WDQ-10-2293, 2011 WL 809488 (D. Md. Mar 2, 2011), *reconsideration denied*, 2011 WL 3664897 (Aug. 18, 2011).[14]

    2.   Towner and Edgewood Writs[15]

Although HUD contends that the Towner and Edgewood writs are against federal funds it controls, it has shown only that HABC controls funds that Towner and Edgewood hold, and HUD controls funds that HABC holds. It has not explained *HUD's* control of the Towner and Edgewood funds. Unlike the funds in HABC's Merrill Lynch account, HUD has not shown that it may freeze funds in Towner's or Edgewood's accounts. It has not shown that it is a third party to account agreements between Towner or Edgewood and their banks or HABC.[16] *See, e.g.*, Mot. to

---

[14] HUD's motion to intervene, ECF No. 30, will be granted. The United States may properly intervene when it has a property interest in funds at stake in the litigation. *See Henry v. First Nat'l Bank*, 595 F.2d 291, 307 (5th Cir. 1979) (district court properly granted government's motion to intervene when government "claim[ed] that its property interest in all funds granted to [the defendant] could not be subjected to judicial process in the . . . state courts").

[15] HUD filed a consent motion for leave to file a supplemental brief. ECF No. 47. That motion will be granted.

[16] HUD notes that HABC pays "all electric, gas, water, and sewer expenses for [some of the Towner and Edgewood properties] using federal funds." Supp. Br. 4 n.3, 2 n.2. This shows that HABC remains involved with operating the properties, but is irrelevant to HUD's control over funds in Towner's and Edgewood's accounts—this shows only that HABC paid the utilities expenses with funds that did not enter Towner's or Edgewood's accounts.

Quash Ex. K (Property management agreement between HABC and Towner). In fact, HABC, not HUD, enforces the properties' compliance with Federal regulations, *id.* Ex. K §3.1, and under agreements with HABC, the properties' managers are not agents, employees, or partners of HABC, *id.* Ex. K § 2.4.

Like *Hyman v. Housing Authority of Baltimore City*, No. WDQ-10-3566, 2011 WL 3651826 (D. Md. Aug. 17, 2011),[17] HUD has not shown—as it must when removal is challenged—that the writ has been effectively "commenced against" it. At most, HUD has shown that it may be an indirect stakeholder in the garnishment.[18]

---

[17] In *Hyman*, the plaintiff obtained writs of garnishment on Towner from the Clerk of Baltimore City Court to enforce a judgment against HABC. As here, HUD removed to federal court and moved to quash. This Court granted Hyman's motion to remand because HUD was not a real party in interest. 2011 WL 3651826 at *2-3.

[18] HUD relies on *Sobol v. Haitian Academy*, No. 88-cv-1372, 1990 WL 37901 (N.D.N.Y. March 23, 1990) to show that federal funds may remain under federal control even after passing through a government intermediary to a private actor. *See* Supp. Br. 6. In *Sobol*, the United States Department of Agriculture ("USDA") gave funds for the National School Lunch Program ("NSLP") to the State of New York, who in turn distributed the funds to schools including the Haitian Academy. 1990 WL 37901 at *1. Ruling on the USDA's motion to quash a writ of garnishment against the school's accounts, the court held that the school was a distinct entity from the Foundation for the Haitian Academy, the party found liable in in the underlying case. *Id.* Thus, the school's funds were not subject to garnishment. *Id.* In *dicta*, the court noted that the USDA required that the NSLP funds be "paid out for the grant purposes or must revert to the United States" because the government held an equitable lien on the funds. *Id.* *Sobol* does not control the outcome of this case because here HUD has no equitable lien on the funds after they reach Towner and Edgewood.

The writ does not appear to operate against funds that—although nominally held by another party—are HUD's, nor does it appear to interfere with any contractual rights between HUD and the garnishee. The plaintiffs are not "essentially attempting to enforce [their] garnishment action against the United States" with respect to Towner and Edgewood. *Burtis Motor Co., Inc. v. Ross*, No. 90-1335-K, 1990 WL 146511, at *1 (D. Kan. 1990) (*citing Nationwide*, 793 F.3d at 1046-47). This garnishment does not threaten HUD with the state's coercive power in a "sufficiently real" way, and § 1442 does not provide a basis for removal. The motion to remand will be granted with respect to the Towner and Edgewood writs.[19]

3. Hyatt Hotels Writ

As the plaintiffs argue, HUD has not asserted or shown any federal interest in Hyatt's funds. Mot. to Remand, 2. HUD has shown no basis for jurisdiction over the writ; the motion to remand will be granted as to the Hyatt writ.[20]

---

[19] *See IMFC Prof'l Servs. of Fla. v. Latin Am. Home Health, Inc.*, 676 F.2d 152, 160 (5th Cir. 1982) ("Once . . . discretion to decline jurisdiction is exercised, the proper procedure is to remand the case under § 1447 (c), for at this point the case becomes one 'removed improvidently and without jurisdiction.'").

[20] Hyatt's motions related to the writ against it will also be remanded. ECF Nos. 27, 45.

12

B.  HUD's Motion to Quash

Absent consent of the federal government, sovereign immunity prevents a judgment creditor from garnishing or attaching federal funds. *See Buchanan,* 45 U.S. at 20-21; *U.S. Dept. of Hous. & Urban Dev. v. K. Capolino Const. Corp.*, 10-civ-390, 2001 WL 487436 at *4 (S.D.N.Y. May 7, 2001). The judgment creditor bears the burden of proving that the funds sought are not federal or have been finally expended for their statutory purpose. *Palmiter,* 733 F.2d at 1248; *cf. Flatow v. Islamic Republic of Iran,* 67 F. Supp. 2d 535, 540 (D. Md. 1999). Otherwise, unless the creditor identifies some waiver of immunity, the writ should be quashed. *See FDIC v. Meyer,* 510 U.S. 471, 475 (1994); *Palmiter,* 733 F.2d at 1250.

1.  Merrill Lynch Writ

HUD argues that the Merrill Lynch writ of garnishment should be quashed because federal funds may not be used to satisfy The plaintiffs' judgment. Govt's Mem. in Supp. of Mot. to Quash 6-8.

The plaintiffs argue that:

> the funds held by Merrill Lynch . . . that . . . originate from HUD sources remain subject to garnishment because HUD has wholly failed to employ sufficient accountability procedures to ensure these funds retain their federal identity.

Resp. to Mot. to Quash, 7. The plaintiffs recognize, however, that HUD retains the right to recapture funds it gives to HABC. *Id.* at 10. In addition, HABC may not withdraw funds from HUD-

funded accounts except to pay costs of developing and operating ACC projects and purchase investment securities that HUD approves in the ACC's, and for other uses that HUD specifically approves. Notice of Removal Ex. I at 4.

HUD "ensure[s] that the grants are being spent as directed." Resp. to Mot. to Quash at 10 (citing Capolino, 2001 WL 487436 at *4). It retains the power to freeze withdrawals from the Merrill Lynch account, Notice of Removal Ex. E ¶5, and requires HABC to maintain itemized records of expenditures of funds so that HUD can confirm that HABC uses the funds "in accordance with each specific program regulation and requirement," id. Ex. I at § 9.

This extensive regulation demonstrates that the funds in HABC's Merrill Lynch account are federal property in HABC's accounts. See Buchanan, 45 U.S. at 20-21; Goods, 2011 WL 809488 at *1.

The plaintiffs have not identified any waiver of HUD's sovereign immunity from garnishment. Accordingly, HUD's motion to quash the Merrill Lynch writ must be granted.

    2.   Tower and Edgewood Writs

HUD's motion to quash will be denied as to the Tower and Edgewood writs, as HUD has not shown that the writs are against it.

### 3. Personal Property Writ and Levy

HUD moves to quash the writ against HABC "as to any personal property purchased with federal funds." Mot. to Quash 26. When federal grants impose "minute controls on the use of the funds, such that the recipient has very little discretion," and the control extends to personal property purchased with the funds, the federal government has a property interest in that property and may prevent sale and distribution of it. *In re Joliet-Will Cnty. Cmty. Action Agency*, 847 F.2d 430, 432 (7th Cir. 1988); *see also Neukirchen v. Wood Cnty. Head Start, Inc.*, 53 F.3d 809, 812-13 (7th Cir. 1995).[21] Minute controls include "regulations over the budget, chargeable items, costs, and use of funds." *Neukirchen*, 53 F.3d at 813.

The plaintiffs argue that because HUD does not employ sufficient restrictions on its grants to HABC, HUD cannot assert a property interest in property purchased with grant funds. Resp. to Mot. to Quash 7. HABC argues that its personal property "acquired with Federal funds . . . is not available to

---

[21] In *Joliet-Will*, the government required the organization to "reconvey to the government, if the government tells [them] to, every piece of property costing $1,000 or more." 847 F.2d at 432. In *Neukirchen*, all property had to be "used in the project or program for which it was acquired" or, if no longer required for one project, "in other projects or programs currently or previously sponsored by the Federal Government." 53 F.3d at 813 (citing 45 C.F.R. § 74.137). In both cases the court held that the Federal Government had a property interest in the property, though title was in another agency's name. *Joliet-Will*, 847 F.3d at 432; *Neukirchen*, 53 F.3d at 813.

pay the judgments in question," and that all of HABC's real and personal property is exempt from levy under Maryland law. Resp. to Mot. for Other Relief 2, 4. HUD contends that it has a property interest in all personal property that HABC purchased with HUD funds subject to extensive regulation, and the levy must be quashed as to that property. Mem. in. Supp. Mot. to Quash 29.

HUD regulates the use, management, and disposal of personal property acquired under its grants. *See* 24 C.F.R. § 85.32(c)-(e). HABC must use the property "for the program or project for which it was acquired," and for other programs "supported by the Federal Government," if using it for the other programs "will not interfere with the work on the projects . . . for which it was originally acquired." *Id.* § 85.32 (c)(1)-(2). HABC must maintain detailed records of equipment it buys with HUD funds, provide a control system with safeguards preventing loss, damage, or theft of the property, and "keep the property in good condition." *Id.* § 85.32 (d). HABC must dispose of equipment when it is "no longer needed for the original project or program or for other activities . . . supported by a Federal agency." If the equipment has a fair market value of more than $5,000 at the time it is disposed, HUD has the right to a portion of the sale proceeds. *Id.* § 85.32 (e). These regulations are adequately "minute," and HUD has a property interest in HABC

16

personal property purchased with HUD funds. Accordingly, the writ must be quashed as to all personal property purchased with HUD funds.[22] *See Neukirchen*, 53 F.3d at 812-13.

HUD does not argue that it has an interest in HABC property that was *not* purchased with HUD funds. Indeed, only "[p]roperty purchased with federal grant funds constitutes federal property." *Neukirchen*, 53 F.3d at 811. Accordingly, HUD has no interest in property purchased without federal funds. The writ and levy will be remanded with respect to the property purchased without HUD funds.[23]

C. The Plaintiffs' Motion for Writ of Garnishment

The plaintiffs request a writ of garnishment against Deutsche Bank Securities Inc. ECF No. 35. HUD has asserted no

---

[22] The plaintiffs moved to enforce the writ of execution and levy upon HABC's personal property. ECF No. 29. HABC opposed these motions because its personal property was purchased with federal funds and cannot be sold to satisfy the plaintiffs' judgments without HUD's consent. Opp'n to Mot. for Other Relief 1. The motion to enforce will be denied with respect to the quashed portions of the writ and levy, and remanded with respect to the other portions.

[23] HABC provided lists of its expendable and non-expendable personal property. Mot. to Quash Ex. II. All non-expendable property with asset cost account numbers beginning with 116, 120, and 235 were purchased with HUD funds and are not subject to levy. *Id.* ex JJ at 2. HUD avers that HABC is "currently" verifying the source of funding for 3,296 items of expendable personal property. *Id.* 31. HABC will be ordered to present the court with the results of the verification within 30 days.

interest in Deutsche Bank's accounts.[24] ECF No. 46. "In addition to granting independent jurisdiction over state-court cases involving federal officers [or agencies], a § 1442(a)(1) removal to federal court creates ancillary jurisdiction over the non-federal elements of the controversy." *Nikas v. Quinlan*, 29 F.3d 619, 619 n.1 (1st Cir. 1994). "[T]hrough its creation of an ancillary jurisdiction, [§ 1442 (a) (1)] confers discretion on the district court to decline to exercise continued jurisdiction over [all removed] claims," once the claim commenced against the federal officer or agency has been resolved. *IMFC Prof'l Serv. V. Latin Am. Home Health, Inc.*, 676 F.2d 152, 160 (5th Cir. 1982). Ancillary claims should be remanded under § 1447 (c) when the claims related to the federal officer or agency have been resolved. *Id.*

As the claims related to HUD have been resolved, the motion for a writ on Hyatt will be remanded.

III. Conclusion

For the reasons stated above, HUD's motions to intervene and for leave to file a supplemental brief will be granted. HUD's motion to quash and the plaintiffs' motions to remand and for other relief will be granted in part, and denied in part.

---

[24] HUD's motion for extension of time to respond to the motion for a writ on Deutsche Bank, ECF 41, will be denied as moot.

Hyatt's motion for judgment and the plaintiffs' motion for writ of garnishment will be remanded.

_Sept 28, 2011_
Date

/s/ William D. Quarles, Jr.
William D. Quarles, Jr.
United States District Judge